**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
MAY 30 2017
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| Ruiyang Li | ) | H17-0849 |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  1/1/2007 to on or about 04/26/2017  in the county of  Harris and elsewhere  in the  Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 2320 | Trafficking in counterfeit goods or services |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Corbin Wickman, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date:  05/30/2017

_____
_Judge's signature_

City and state:  Houston, Texas   U.S. Magistrate Judge Frances Stacy
_Printed name and title_

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:17MJ **H17-0849** |
| ) | |
| RUIYANG LI ) | |
| ) | |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Corbin Wickman, Special Agent with the United States Department of Homeland Security ("DHS")/Homeland Security Investigations ("HSI"), being duly sworn, depose, and state the following:

1. This affidavit is submitted in support of a criminal complaint and arrest warrant charging Ruiyang LI with intentionally, unlawfully, and knowingly conspiring with others, known and unknown, in the trafficking of computer networking hardware and memory from Hong Kong and China into the Southern District of Texas and elsewhere, knowing that these computer networking hardware and memory parts were counterfeit, and distributing these parts within the Southern District of Texas and elsewhere, all in violation of 18 U.S.C. § 2320(a)(1).

2. This affidavit is for the limited purpose of obtaining a criminal complaint and arrest warrant. It is not intended to include each and every fact and matter observed by me or known to the government.

3. I have been employed by HSI as a Special Agent since 2005. During my tenure as an HSI Special Agent, I have participated in numerous criminal investigations involving intellectual property, financial crimes, fugitive apprehensions, white collar crime, as well as other unlawful activities. During my time as an HSI Special Agent I have also participated in numerous

searches, arrests and seizure warrants involving a variety of federal offenses. I am currently assigned to the Houston, Texas Division of HSI.

4. The facts and information contained in this Affidavit are based on my personal knowledge, as well as on the observations of other agents and officers involved in this investigation.

5. Title 18 of the United States Code, Section 2320, provides, in relevant part, that whoever intentionally traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, or traffics in labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, shall be guilty of a federal offense.

6. Special Agents with HSI, along with U.S. Customs and Border Protection (CBP) Officers, are authorized by law to inspect merchandise and individuals who are either entering or departing the borders of the United States without warrant. This authority is described in Title 19 of the United States Code, Sections 482, 1467, 1496, 1581 and 1582.

7. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 2320 is subject to civil forfeiture. In addition, pursuant to 18 U.S.C. § 2323(a)(1), any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense in violation of 18 U.S.C. § 2320 is subject to civil forfeiture.

## Probable Cause

8. Hewlett Packard (HP), Cisco Systems, Inc. (Cisco) and Intel Corporation (Intel) are American companies engaged in the design, manufacturing, and selling of computer networking and memory hardware that are subject to multiple federal trademark registrations. Many of the products manufactured by HP, Cisco, and Intel comprise the backbone of America's modern communication infrastructure, including numerous governmental computer networks. Counterfeit HP, Cisco, and Intel products are not quality-controlled and could cause entire computer networks to falter or experience significant losses of data.

9. HP owns U.S. Trademark Registration Number 1,842,724 for the logo: [hp] ; U.S. Trademark Registration Number 1,840,215 for a word mark bearing the letters "HP"; and U.S. Trademark Registration Number 2,296,865 for the "ProCurve" word mark.

10. Cisco owns U.S. Trademark Registration Number 3,759,451 for its word mark and bridge logo [cisco] , in addition to U.S. Trademark Registration Number 2,498,746 for the "Cisco" word mark.

11. Intel owns U.S. Trademark Registration Number 3,690,667 for the Intel logo: (intel) and U.S. Trademark Registration Number 2,446,693 for the "Intel" word mark.

12. Based on public-source searches and documents obtained in this investigation, "Computer Corporation A," as referenced in this affidavit, was a private company with its principal place of business in the United States, namely in the Southern District of Texas. Computer Corporation A was involved in the importation and sale of counterfeit HP, Cisco and/or Intel computer networking and memory products that were purchased from LI from in or about April 2007 through in or about February 2014.

3

13. At all relevant times over the course of this investigation, Cooperating Witness 1 ("CW1") resided within the Southern District of Texas and was the owner of Computer Corporation A. In March 2016, CW1 pleaded guilty to one count of conspiring to traffic in counterfeit HP and/or Cisco products. Pursuant to his plea agreement, CW1 agreed to cooperate with the government in its continuing investigation into LI and others. Over the course of this investigation, LI sold and supplied counterfeit HP, Cisco, Intel, and/or IBM computer networking and memory products to Computer Corporation A, as well as other individuals and companies located around the world.

14. According to CW1, starting in or about February 2007, he/she knowingly and intentionally purchased counterfeit HP and/or Cisco computer networking and memory products from LI and continued purchasing such products after CBP seized numerous importations of these products because they contained counterfeit items. From on or about May 2008 through on or about February 2013, CW1 received approximately eight letters from CBP warning that he/she had imported counterfeit HP and/or Cisco merchandise. CW1 discussed some of these letters with LI, and the co-conspirators devised new tactics to avoid the detection and seizure of future shipments of counterfeit HP and Cisco parts. As explained more fully below, the information provided by CW1 is corroborated by documents obtained from Computer Corporation A, single-party consent recordings between LI and CW1, and other documents obtained during the investigation.

### Identification of LI

15. Over the course of their relationship, CW1 knew LI as "Zhang," and he/she communicated with LI using that name. "Zhang" is one of several aliases used by LI. Depending on the customer, he also goes by "Bob," "Tim," "Timo," "Timobes" and "Lee." In

4

the furtherance of his schemes, LI used multiple email accounts, including "timobes@gmail.com" and "timobes@yeah.net," as well as PayPal accounts connected to "timobes@gmail.com," "dyp1999@yeah.net," and "alice1979@yeah.net." LI also used numerous individual and business bank accounts to receive the proceeds of sales of counterfeit computer parts.

16. On October 14, 2012, using "timobes@gmail.com," LI emailed CW1 stating, "I want to apply US visa, and visit you this year, Can I put your contact info for visa use?" CW1 replied, "Yes sir," to which LI responded, "I will apply me and my son, in Chinese name of: RUIYANG LI and [B.L.]" According to records from the U.S. Department of State, LI applied for a non-immigrant visa for travel to the United States on or about October 14, 2012. The listed U.S. contact on the visa application matched the name of CW1 and Computer Corporation A. The visa application listed LI's travel companion as B.L., which matches the name of LI's son. The home address listed by LI was "2B Unit 2, Building 1, Baoxinghuating, Wangjing Chaoyang District, Beijing, China 100102."

17. On or about April 1, 2017, consensually posing as CW1, I sent an email to LI at "timobes@yeah.net" and requested his mailing address in China. On April 3, 2017, LI responded with the same address that was referenced in paragraph 16. On the same date, LI also sent me an email listing his name as "Ruiyang Li Zhang." Other records received from eBay and PayPal show that LI registered accounts associated with email account "timobes@gmail.com" and that funds were withdrawn from PayPal to a personal bank account in the name of Ruiyang LI.

## Knowledge of Wrongdoing

18. Over the time period described in this Complaint, CW1 and LI primarily used email and instant messages (IM) to communicate about the trafficking of counterfeit HP and/or Cisco computer networking and memory products. These emails and IM's show, among other things, that after Computer Corporation A would send money to LI via PayPal or wire transfer, LI would arrange for shipments of counterfeit HP and Cisco computer networking and memory products to be sent from China and/or Hong Kong to addresses associated with Computer Corporation A and CW1 in the Southern District of Texas.

19. In May 2008, CBP Officers seized a shipment of counterfeit HP memory products imported by CW1 from China. IM chat logs reveal that LI was responsible for sending the seized counterfeit HP products to CW1. Despite the seizure, LI continued to sell and cause the delivery of counterfeit HP and Cisco products to CW1 and other customers. To avoid or reduce the impact of Customs seizures, LI suggested 1) using different shipping companies; 2) shipping goods first to Canada, the United Kingdom or other U.S. addresses, and then to CW1; and 3) shipping orders in multiple parcels.

20. In December 2012, CBP Officers seized seven shipments of counterfeit HP and Cisco networking products imported by CW1 from China. IM chat logs reveal that LI was responsible for sending the seized counterfeit HP and Cisco products to CW1. Despite the seizures, LI continued to sell and cause the delivery of counterfeit HP and Cisco products to CW1 and other customers. LI assured CW1 that he would replace or re-ship any future orders of counterfeit parts seized by CBP.

21. Between April 2007 and April 2014, defendant LI received numerous other warnings that he was selling and/or shipping counterfeit goods:

- On April 18, 2007, a customer emailed LI at "timobes@gmail.com" that, "It does look, like your [sic] is *NOT* Original Cisco GBIC…it is not genuine."

- On November 17, 2009, a customer emailed LI at "timobes@gmail.com" stating that "all units are quite poor fakes and were therefore rejected by our customer…non original packaging and quality seal, all checked units report the same serial #..."

- On August 19, 2011, a customer emailed LI at "timobes@gmail.com" asking: "Can I return 18 pieces of 413015-B21? I had a major problem with HP and cannot sell them here at all."

- On September 13, 2011, a customer emailed LI at "timobes@gmail.com" claiming that "this was our last business with you! You have send [sic] us totally faked stuff, including typing error on the Brand-Labels!"

- On June 11, 2013, a customer emailed LI at "timobes@gmail.com" claiming that "…this for the RMA as I bought this from you and your serial no inside and on the packing did not match! Now customer wants replacement so please be careful when you send you prdoucts [sic]."

- On April 25, 2014, a customer emailed LI at "timobes@gmail.com" stating that, "I received the memory and it's counterfeit."

But despite these and other warnings, LI continued to engage in the selling and shipping of counterfeit HP and/or Cisco computer networking and memory products.

### Recent Encounters

22. Between February 2017 and April 2017, posing as CW1, I communicated with LI via email and IM and made three purchases of HP, Cisco, and Intel parts at steeply discounted prices. For example, although I paid LI only $3,710 USD for 120 HP, Cisco, and Intel parts, the

7

Manufacturer's Suggested Retail Price (MSRP) for these parts, if genuine, would be approximately $70,000 USD. LI arranged to have the HP, Cisco, and Intel parts shipped from locations in California, New Jersey, China, and Hong Kong to the Southern District of Texas. All of the HP, Cisco, and Intel parts purchased and received from LI have been determined by industry representatives to be counterfeit and infringe on one or more trademarks that are registered with the United States Patent and Trademark Office.

23. My recent communications with LI, combined with CW1's prior interactions, show that LI is continuing to sell counterfeit items and presently uses some of the same concealment techniques that he has used since at least 2012. For example:

- On or about October 15, 2012, LI sent an IM to CW1 offering to send "nude products, label serprate [sic]" to CW1 as a means of avoiding detection and seizure by CBP of shipments of counterfeit HP and Cisco parts.

- On or about December 19, 2012, LI sent another IM to CW1, again suggesting that "maybe can get nude memory send you, you put lable [sic] there, memory send 1 time, lable [sic] send as document…a brazil client do that, never problem at all…like you need 20 x 50662-b21. 1-send memory to you, 2- send all lable [sic] to you as document, 3- send box for you."

24. Approximately five years later, on April 7, 2017, during a single-party consent recording between LI and CW1, LI stated that he could send "nude" or "naked" parts to CW1, and send another parcel described as "documents" to CW1 containing the labels. LI stated that he has done this with a customer in Florida. LI used the phone number (302) 394-9289 during this call, which—according to law enforcement database records—is registered to Ruiyang LI.

8

25. On April 26, 2017, I received a DHL parcel from Hong Kong containing 10 blank HP and 25 blank Cisco networking parts. The parts did not contain registered HP or Cisco trademarks, but they did contain a sticker with HP and Cisco part numbers and other indicators consistent with HP and Cisco serial numbers. Also on April 26, 2017, I received an EMS parcel from Shenzhen, China containing HP and Cisco product labels and other stickers, labels, and packaging necessary to assemble 10 HP and 25 Cisco networking parts for retail sale. The serial numbers on the HP and Cisco product labels corresponded to the numbers on the blank HP and Cisco parts received in the DHL parcel. LI sent me the tracking number of both parcels after I placed an order for HP and Cisco parts on April 14, 2017.

26. Records received from PayPal pursuant to Grand Jury subpoenas and email records received from Google pursuant to a search warrant reveal that LI has received more than $2 million USD in proceeds from the sales of counterfeit HP, Cisco, IBM, Intel and other computer networking and memory products from on or about January 2007 to the present. A conservative estimate of the MSRP of these items is approximately $10,000,000 USD.

## Conclusion

27. For the foregoing reasons, I state that there is probable cause to believe that Ruiyang LI knowingly violated 18 U.S.C § 2320(a)(1).

Corbin Wickman
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 30th day of May 2017, and I find probable cause

The Honorable Frances Stacy
United States Magistrate Judge
Houston, TX

9