UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | 4:17-CR-450-1 |
| | § | |
| V. | § | 11:22 A.M. TO 12:31 P.M. |
| | § | |
| RUIYANG LI | § | FEBRUARY 15, 2019 |

HEARING ON SENTENCING
BEFORE THE HONORABLE EWING WERLEIN, JR.
Volume 1 of 1 Volume


**APPEARANCES:**

**FOR THE UNITED STATES OF AMERICA:**
Mr. Jay Hileman
Office of the United States Attorney
1000 Louisiana
Suite 2300
Houston, Texas 77002
(713) 567-9391

**FOR THE DEFENDANT, RUIYANG LI:**
Ms. Marjorie A. Meyers
Federal Public Defender
440 Louisiana Street
Suite 1350
Houston, Texas 77002
(713) 718-4600

**INTERPRETER:**
Ms. June Hu
Houston Interpreting
515 Rusk
Houston, Texas  77002

Court Reporter:
Laura Wells, RPR, RMR, CRR
515 Rusk Street, Suite 8004
Houston, Texas 77002

Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

2

1                          **PROCEEDINGS**

2              THE COURT:  The Court calls for sentencing Number

3    17-450, United States v. Ruiyang Li.

4         For the United States.

11:23:03    5              MR. HILEMAN:  Good morning, Your Honor, Jay

6    Hileman for the United States.

7              THE COURT:  Thank you, sir.

8              MS. MEYERS:  Margie Meyers for Mr. Li, Your

9    Honor, and he is approaching.

11:23:14   10              THE COURT:  Thank you, ma'am.  Let's see.  I

11   think I have -- this is what I'm looking for.

12              MS. MEYERS:  The yellow pad.

13              THE COURT:  Yes.  All right.

14         This sentencing is -- it's accurate, is it not,

11:24:04   15   Ms. Meyers, that the defendant was found guilty of Count

16   Two of the indictment pursuant to a plea agreement?

17              MS. MEYERS:  It is, Your Honor.  Before we

18   proceed with sentencing, I would like to be heard on the

19   question of whether or not the government has breached the

11:24:20   20   plea agreement.

21              THE COURT:  Well, I'm going to --

22              MS. MEYERS:  Okay.

23              THE COURT:  We're going to talk about that.  I

24   have noticed that motion.

11:24:28   25         And have you received and read and had an opportunity

*Laura Wells, CRR, RDR*

1   for your client to have read to him in whatever dialect of

2   Chinese he speaks and discuss with you the presentence

3   investigation report and the addendums from the probation

4   office?

11:24:45  5        MS. MEYERS:  We have gone over the documents,

6   Your Honor.  The interpreter has been available, and

7   Mr. Li has indicated when he needed the services of the

8   interpreter.

9        THE COURT:  Very well.  Thank you.  All right.

11:24:56  10  Now, we have also -- let me understand what has been filed

11  in connection with this sentencing.  The United States has

12  filed its statement of no objections at Document Number 31

13  and a 3E1.1(a) and (b) motion; and then, three days later,

14  filed its objections at Document Number 32.

11:25:28  15      They filed -- the government has filed a motion for

16  downward departure on Section 5K1.1 at Document Number 52,

17  a response to the defendant's supplemental response at

18  Document Number 53, a request for victim participation at

19  Document Number 62, response to the defendant's motion to

11:25:51  20  remedy breach at Document Number 63.

21      The defendant, I show, is -- I have received in

22  connection with this sentencing all those and read them,

23  as well as the PSR; and I should have said the revised PSR

24  dated January 24, 2019.  Is that the one you were

11:26:11  25  referring to, Ms. Meyers?  That's the one I read.

*Laura Wells, CRR, RDR*

1          MS. MEYERS:  In terms of reviewing it with my

2  client?

3          THE COURT:  Yes.

4          MS. MEYERS:  I have reviewed both of them, Your

11:26:19   5  Honor.

6          THE COURT:  All right.  Thank you.  The defendant

7  has filed objections at Document Number 33, the

8  supplemental response to the PSR and addendum at Document

9  Number 49, the sentencing memorandum at Document 48, and

11:26:33   10  the letters in support of Mr. Li, and an opposed motion to

11  remedy breach of plea agreement at Document Number 61.

12      Are these all of the matters now that have been filed

13  in connection with this sentencing?

14          MR. HILEMAN:  Yes, Your Honor.

11:26:49   15          MS. MEYERS:  Yes, Your Honor.

16          THE COURT:  All right.  So I think Ms. Meyers is

17  correct that first to be addressed is the opposed motion

18  to remedy what the defendant has described as a breach of

19  plea agreement by the government.

11:27:08   20      Did you have anything additional to add, plus what you

21  have already written in your submissions?

22          MS. MEYERS:  Just briefly, Your Honor, to correct

23  a statement made by the government in its response.  The

24  government -- the Court has accurately set forth the

11:27:21   25  filings in this case.  The government suggested that in

1    filing this supplemental response, in which we argued that

2    based on the victim's statements the loss was, in fact,

3    less than $3,500,000, that somehow we breached the

4    agreement first.

11:27:37    5        I think that's disingenuous.  I sent that supplement

6    to the government before I filed it.  I asked -- I

7    mentioned it, should I go ahead before there was a

8    discussion with the victims, and Mr. Hileman said go ahead

9    and file it.

11:27:52   10        And his response to my supplement was a response on

11    the merits.  There has never been any indication that

12    somehow that was a violation of the agreement and that the

13    government therefore would feel it was not bound by the

14    agreement.  And it is incumbent upon the parties, if they

11:28:10   15    think there is a breach, to let the other side know that

16    as soon as possible, which is, in fact, what happened way

17    back when, as the Court indicates, the government

18    originally said there was no objection to the plea

19    agreement.  I immediately advised the government that that

11:28:25   20    was a breach of the plea agreement, and they immediately

21    fixed it and set forth the reasons why the parties came to

22    the agreement of less than $9,500,000.

23        Even yesterday, in responding to my motion, the

24    government is somewhat disavowing what we agreed to, which

11:28:43   25    is it is certainly true that we had those charts.  But I

*Laura Wells, CRR, RDR*

think what is very important, and similar to the *Hebron*
case, is that those charts, the only scientific fact or
mathematical fact, is that there is, in fact,
approximately $2 million worth of sales.  The rest is an
estimate.  And the agent originally took a multiplier of
five and estimated $10,500,000.

After lengthy discussions and analysis of the
evidence, the parties recognize that that estimate was not
the best estimate in a system in which the Court must
consider and make a reasonable estimate, understanding
that that estimate is going to result in years of prison.

As Mr. Flowers indicated in the government's second
filing, nobody really knows what the infringement amount
is.  It's impossible to calculate.  It could be a
multiplier of two.  It could be a multiplier of five.  It
could be a multiplier of 20.  And that is why the parties
came to a decision that it was less than $9,500,000
because anything beyond that is speculation, which the
Fifth Circuit has recognized nobody is allowed to base a
sentence on.

That's where the nine and a half or less than
$9,500,000 comes from, and that is buttressed by the fact,
and the probation department talks about, the Court has to
determine the infringement amount.  And I'm getting to
loss, but it's tied into the breach question because the

1    government suggests that we just made up that number to

2    come up with a guideline range.  We didn't just make up

3    that number.  These parts are not like other items.

4         For example, I am -- just as I pretend to be a

5    proletarian, that may be; but I carry a Coach bag.  A

6    Coach bag's value is readily ascertainable.  You go to the

7    Galleria.  There are five stores.  They can tell you what

8    the retail value of a Coach bag is.

9         The victims in this case have said that they sell

10   their items at a 65 percent discount or I think the other

11   one was a 45 percent discount.  So even that information

12   tells us that, in fact, the infringement amount is less

13   than $9,500,000.

14        The government has explained, I think rightly, that

15   it's still more than $3,500,000 because Mr. Li was

16   obviously making a profit and there are other victims.

17        But this is not just a number the parties came up with

18   to come up with a guideline enhancement.  This was reached

19   after careful negotiations based on the uncertainties of

20   the loss calculation, and the government was bound to

21   explain that to the Court when the Court asked for more

22   information.

23        THE COURT:  All right.  Mr. Hileman, do you wish

24   to speak in response?

25        MR. HILEMAN:  Yes, Your Honor.  Thank you.

*Laura Wells, CRR, RDR*

1    In determining whether a breach of a plea agreement

2  has occurred, the Court must consider whether the

3  government's conduct is consistent with the defendant's

4  reasonable understanding of the agreement.

11:32:04  5    The defendant's reasonable understanding of the

6  agreement was that Special Agent Wickman came up with his

7  infringement table in an attempt to estimate how much loss

8  or damage the defendant had caused to these companies; and

9  it had been $10,500,000 all along.

11:32:23  10    I recognize some merit in the arguments defense

11  counsel is making that there are -- there are inherent

12  estimations in this table.  And for that reason, we

13  decided to give the benefit of the doubt to the defendant.

14  And instead of going with the $10.4 million figure, we

11:32:40  15  went with the between $3,500,000 and $9,500,000.

16    But at no time did the government's conduct ever --

17  was the government's conduct ever inconsistent with what

18  the defendant believed the agreement was.  As Ms. Meyers

19  has conceded, she has known that that was the government's

11:32:58  20  estimate all along.

21    Special Agent Wickman was asked to explain that

22  estimate in more detail after our last court appearance,

23  and he did that.  He did that in a perfectly consistent

24  fashion with the data and arguments that the government

11:33:12  25  has made all along.

1   The government has defended the plea agreement in

2   writing several times, both in response to her

3   supplemental objection and in response to the presentence

4   report, and continues to do so here today.

11:33:27   5   I would ask the Court to deny the defendant's motion

6   and find that the government has been -- has acted

7   consistently with the plea agreement throughout.

8   THE COURT:  Thank you.  All right.

9   Well, all this flurry began when the case was set for

11:33:45  10   sentencing a couple of weeks ago.  I had at that time been

11   presented a revised presentence investigation report,

12   which had come in about a week before.  And then there was

13   followed -- I had objections that had been filed already

14   on the calculation amount from the, it turned out, both

11:34:12  15   the government and the defendant.

16   I read the objections.  The defendant, for example, in

17   her supplemental response, objected to the addendum

18   prepared by the probation officer saying that, quote,

19   "offers nothing to explain why a choice of the highest

11:34:45  20   multiplier is a conservative figure," close quote.

21   I parenthetically note it's not the highest

22   multiplier, but it was the -- it was higher than what the

23   defendant requested.  There are much higher multipliers in

24   the evidence.

11:35:01  25   But I thought, as I read this PSR, the revised PSR,

*Laura Wells, CRR, RDR*

1    and the objections, obviously, finding that the government

2    and the defendant had -- were urging a different number, I

3    thought I needed to have better information as to why the

4    probation office is making this recommendation to me.

11:35:29   5        The probation office, as you know, is the branch of

6    the federal judiciary, not the U.S. attorney's office or

7    defense counsel.  It's an investigatory and supervisory

8    arm of this court.  And I have high respect for them, just

9    as I have high respect for both of the lawyers here in

11:35:55  10   this case.  And so I requested -- I deferred the

11   sentencing in order to obtain more complete information.

12        The third addendum has, therefore, been filed; and the

13   probation office has procured data, which I gather, from

14   what you have said, Ms. Meyers, was available to the

11:36:24  15   defense lawyer long before it ever came to my attention

16   here in the past --

17             MS. MEYERS:  That's correct.

18             THE COURT:  -- just with the third addendum, that

19   the government and you both had had an opportunity to read

11:36:36  20   the analysis, the tables.

21        And I gather the case agent did nothing new and did

22   not attempt to take any other steps to change what he had

23   presented originally, I guess probably at least a year

24   ago, to both of you; is that correct?  Am I correct on

11:37:00  25   that?

1          MS. MEYERS:  That's correct, Your Honor.  It was
2    certainly my impression that when the Court reset
3    sentencing that the government would explain to the
4    probation officer why we had rejected the ten and a half
11:37:13  5    million --
6          THE COURT:  Well --
7          MS. MEYERS:  -- which is not data.  It's an
8    opinion.
9          THE COURT:  Well, that's -- that's fine whatever
11:37:21  10   you might have expected.  But what would concern me -- and
11   I do not think you would urge -- is that a government
12   agent reshape his opinion or testimony in order -- and
13   compromise the integrity of the investigation by shaping
14   it into what a U.S. attorney might say.  The Court is
11:37:48  15   entitled to have unvarnished evidence accumulated as best
16   as it can be reported and distilled and produced for the
17   judge in order -- without it being shaded or shaped by
18   what a lawyer may agree to in a plea negotiation.
19        So I see nothing wrong whatsoever in what the case
11:38:16  20   agent did.  Moreover, I do not attribute to the U.S.
21   attorney -- I do not find the case agent in any way
22   breached any agreement, which the case agent had no
23   agreement with the defense lawyer or with the defendant or
24   anyone else, other than to fulfill his role in providing
11:38:42  25   the truth to whatever he had found as part of his

*Laura Wells, CRR, RDR*

1   investigation, his assessment, his evaluation, his

2   judgment, in order that the Court might have the

3   information that the parties have.

4       Now, that being the case, the Court further observes

5   that indeed the U.S. attorney has, as you have pointed out

6   and agreed, filed objections to the loss amount that the

7   probation office had reported its judgment -- on its

8   judgment to the Court.  The U.S. attorney has never, to my

9   knowledge, in anything that's been filed, backed away from

10  the agreement.

11      And I see no obligation, in fact, as I say, on the

12  part of the U.S. attorney to try to influence the case

13  agent's disclosure of information to the probation office.

14  I think that would be of great concern to the Court if

15  there was any shaping of what should come through as

16  investigative materials.

17      Now, I have further gone back to see what did

18  transpire at the re-arraignment itself because that's

19  where this entered the plea agreement between -- as

20  pertaining to the negotiation between the plaintiff or,

21  rather, the government and the defendant.

22      And the -- and there are several passages in the plea

23  agreement itself that seem to pertain, certainly at Page 3

24  of the plea agreement that the parties signed and that I

25  went over with the defendant.  The parties agreed, the

1    defendant agrees, in Paragraph 6A at Page 3, that the plea

2    agreement binds only the United States attorney for the

3    Southern District of Texas and defendant and does not bind

4    any other United States attorney or any other unit of the

5    Department of Justice.

6         This is substantially reiterated in Page 6 of the plea

7    agreement, that the United States in Paragraph 11 that

8    this plea agreement binds only the United States attorney

9    for the Southern District of Texas and does not bind any

10   other U.S. attorney.

11        And further, with respect to sentence determination,

12   which is also on Page 6 of the plea agreement, it states

13   the sentence will be imposed after consideration of the

14   United States Sentencing Guidelines and policy statements,

15   which are only advisory, as well as the United States

16   Code, Section 3553(a).

17        But the defendant, nonetheless, acknowledges and

18   agrees that the Court has authority to impose any sentence

19   up to and including the statutory maximum for the offense

20   to which the defendant pleads guilty.  And the sentence

21   imposed is within the sole discretion of the sentencing

22   judge after the Court has consulted the applicable

23   sentencing guidelines.

24        Further, the defendant understands and agrees that the

25   parties' positions regarding the application of the

*Laura Wells, CRR, RDR*

1   sentencing guidelines, that is what the government and the

2   defendant agreed, do not bind the Court; and that the

3   sentence imposed is within the discretion of the

4   sentencing judge.

11:43:21   5       And if the Court should impose any sentence up to the

6   maximum established by statute or should the Court order

7   any and all sentences to run consecutively, the defendant

8   cannot for that reason alone withdraw a guilty plea and

9   will remain bound to fulfill all obligations under the

11:43:41   10  plea agreement.

11      I looked at the transcript of the sentencing hearing

12  because I thought that I probably would have and found

13  that I did, as I normally do, when the government enters

14  into some kind of a negotiated recommendation where they

11:44:08   15  are going to recommend something in the form of leniency

16  that the defense counsel has negotiated with them -- and I

17  don't criticize the government for doing that.  I can

18  understand that sometimes it may help facilitate the

19  making of a plea agreement and, if it's broadly within

11:44:27   20  their realm of conscience to do so, they can make such an

21  agreement and they have a plea agreement and they don't

22  have to have a trial.

23      But because I have seen before such agreements where

24  the substance of the agreement I find is not supported by

11:44:47   25  a preponderance of the evidence and determination of the

1    material that I need to look at for purposes of making my

2    best judgment on the guidelines, I try to caution a

3    defendant with respect to such agreements.

4        And I did so with Mr. Li at the time of his

11:45:14   5    re-arraignment.  I pointed out that the United States --

6    both the defendant and the United States have agreed that

7    the infringement amount calculated under the U.S.

8    Sentencing Guidelines is more than $3,500,000 and less

9    than $9,500,000.  That's what you and the government have

11:45:34  10    agreed, I gather; is that correct?

11        And Mr. Li said, Yes.

12        And then I said, But I want you to understand that the

13    judge needs and will need to make an independent

14    determination.  And sometimes this Court may find that an

11:45:48  15    amount even greater than what the parties agree upon might

16    have been the loss amount or intended loss amount.  Do you

17    understand?

18        He said he understood.

19        We came back to it later on where the government had

11:46:04  20    said it would recommend a base offense level of 25 and

21    that you have a criminal history category of one.

22        And I pointed out that all Mr. Hileman was doing in

23    that instance was making a recommendation.

24        And then I cautioned him, You understand the agreement

11:46:28  25    he makes is not binding on the Court?

*Laura Wells, CRR, RDR*

1       Mr. Li:  Understand.

2       The Court:  The judge still needs to make an

3  independent determination as to what the correct sentence

4  guideline range is in your case.  Do you understand?

11:46:47   5       Mr. Li said, Understand.

6       The Court said -- and cautioned him specifically --

7  You do not want to enter into this plea agreement or enter

8  a plea agreement on the assumption that what he is

9  recommending is going to happen necessarily.  Is that

11:47:06  10  clear?

11       And the defendant said, Yes.

12       And before concluding, I cautioned him further, later

13  on in the re-arraignment, where the -- again reminding him

14  that the government makes some recommendations and the

11:47:35  15  government has some ideas about what the guidelines should

16  be.  And I said that if I do not follow those

17  recommendations or I don't follow the recommendations of

18  the government for leniency, you still have the right to

19  -- you still have to stand by your plea of guilty and

11:47:53  20  would not have the right at that time to withdraw it.  Do

21  you understand?

22       Mr. Li, again, I understand.

23       No objection was made by the defendant on any of the

24  dialogue; and the Court, before concluding, asked

11:48:09  25  Ms. Meyers if there was any further advice I needed to

*Laura Wells, CRR, RDR*

1   give the defendant.

2        And she replied, I don't think so, Your Honor.

3        So this was not a three or, rather, Rule 11(c)(1)(C)

4   agreement.  Those kinds of agreements, if that kind of

11:48:39   5   plea agreement is made, then the government -- and the

6   Judge approves it, then the Judge is bound to impose that

7   sentence or set that guideline and accept what the parties

8   have negotiated.

9        But this was plainly stated right up there in the

11:48:56  10   front part of the plea agreement itself, in the opening

11   paragraph, this is a Rule 11(c)(1)(A) and (B) plea

12   agreement, not binding upon the Court, which was

13   reiterated over and over again.

14        Now, I find, therefore, that under these

11:49:27  15   circumstances, where all that has transpired in the past

16   two weeks is the Court's continuance in order to get a

17   better understanding of why the probation office is making

18   a recommendation to me which is different from what both

19   the government and the defendant have agreed upon; but I

11:49:51  20   find at no time, either before or since or within any

21   juncture, has the United States breached any agreement in

22   the plea agreement.

23        That I find in all of the written filings, and again

24   in the declaration made here today by Mr. Hileman, that

11:50:16  25   Mr. Hileman has stood by and is standing by the agreement

*Laura Wells, CRR, RDR*

 1    to make these recommendations to the Court that he and

 2    Ms. Meyers have agreed upon and the defendant have agreed

 3    upon.

 4        And I do not find that there is any breach by the

11:50:38    5    United States attorney of this plea agreement when it

 6    stands by while the case agent undertakes to disclose

 7    information to the probation office in greater detail so

 8    the Court will have the benefit of that investigation

 9    without -- which is the same information that both the

11:51:07   10    government and the defendant have had since long before.

11    You know, probably as long as a year ago because this

12    re-arraignment took place quite a long time ago.

13    Re-arraignment was last year, in fact, last December.

14            MR. HILEMAN:  2017.

11:51:36   15            THE COURT:  2017.  Yeah.  And in which here we

16    are now in 2019.

17        So the motion filed by the defendant in Document

18    Number 61 to remedy a breach of plea agreement is in all

19    things denied.

11:51:57   20        Now, I might add, due to the argument that was made,

21    that I don't find that the defendant breached the plea

22    agreement either by -- because I have read quite carefully

23    the language written that discloses information, but I

24    don't believe that that would be sufficient to find the

11:52:37   25    defendant had breached the agreement either.

1          All right.  Now we're to the sentencing.

2               MS. MEYERS:  Now we're to what is the loss, Your

3    Honor.

4               THE COURT:  All right.  I'll rule on the

11:53:05   5    objections then.

6          The government's objection, Document Number 32, and

7    the defendant's objection, Document Number 33, are

8    addressed to the same subject that we have been talking

9    about in connection with the preceding motion.  And that

11:53:31  10    is Paragraphs 12 through 14 of the PSR.  Are those the

11    same paragraphs as in the revised PSR?  In any event, I

12    think that whatever these paragraphs are, it pertains to

13    the intended loss amount.

14               MR. HILEMAN:  It is, Your Honor.  It's

11:54:00  15    Paragraph 14.

16               THE COURT:  And the Court finds that in this

17    matter the U.S. Sentencing Guidelines, Section 2B5.3,

18    deals with criminal infringement of copyright or

19    trademark; and if the infringement amount exceeds $6,500,

11:54:32  20    then the Court is directed to turn to the loss table at

21    Section 2B1.1.  And that's where this -- these categories

22    come of more than $3,500,000, which the government and

23    defendant are proposing, and more than $9,500,000, which

24    the probation office has found reasonable and

11:54:57  25    conservative.

*Laura Wells, CRR, RDR*

1      One thing that everybody acknowledges is that where

2      the case cannot determine the number of infringing items,

3      which is this case, the Court need only make a reasonable

4      estimate of the infringement amount using any relevant

11:55:27   5      information, including financial records.  That is

6      Section 2B5.3, Note 2(E).  That's where the data that

7      probation has submitted with its third addendum presents

8      information based upon the case agent and several summary

9      charts of what the case agent found.

11:56:26   10      As under these circumstances -- there is some data

11      that is known where the amount paid and then the retail

12      price or MSRP, which the Court finds is an appropriate

13      basis for determining intended loss amount in this kind of

14      a case, especially given the guidelines' further statement

11:56:58   15      that the retail value of the infringed item should be

16      considered, not what the retail value is of the infringing

17      item.  That's under Note 2(C), Section 5(B) -- rather,

18      2B5.3.

19      And some data, therefore, is known, most specifically

11:57:32   20      the data that came from Mr. Thomas, who was one of the

21      persons indicted either in this case or in another.  I

22      don't know if it is under --

23            MR. HILEMAN:  A previous case.

24            THE COURT:  A previous case under another cause

11:57:49   25      number but in this court who I had -- whose case was also

*Laura Wells, CRR, RDR*

1    assigned to me.

2        And in that case they were able to determine the

3    amount of receipts that Mr. Li received for these

4    infringing items and then compare those to what the retail

11:58:24    5    value would be.

6        The case agent found and probation found reasonable

7    and reliable that the average multiplier there was six or

8    a weighted average of seven.  Apparently, the -- some

9    items, of course, sold for higher multiples.  As

11:58:52    10    Ms. Meyers said in her earlier argument, it could be as

11    high as 20.  And, indeed, there were some of these items

12    that would have that kind of a multiplier.

13        There is other of -- the other additional empirical

14    data, hard data that's available is what the agent was

11:59:16    15    able to purchase undercover.  And here, he was able to buy

16    for $4,585 matters that had an extended MSRP value of more

17    than $79,000.

18        So the case agent was buying things where the

19    multiplier was 18; and he bought himself something like

12:00:01    20    145 items, not an immaterial amount of purchases.

21        Overall, when you take the data that is known, when

22    you take the data from Mr. Thomas, the ACP company that he

23    had, that constitutes about 12 percent of the total

24    $2 million plus, $2 million and, I think, $56,000, more or

12:00:35    25    less, that they were able to find in the financial records

*Laura Wells, CRR, RDR*

22

1    going to Mr. Li, that is not an immaterial amount or

2    proportion for purposes of statistical sampling.  And in

3    that instance, as pointed out, the weighted average was

4    seven and the multiplier was six.

12:01:05   5    The probation office -- in light of this evidence, the

6    probation office -- and further, the data would show that

7    these multipliers did range from as low as three to 27 and

8    with outliers of 36 and 40 and 61 and even as high as 80.

9    And so, once I got into the data that had been

12:01:42   10   presented and understanding that these things, as the

11   guidelines say, require the Court to make only a

12   reasonable estimate of the infringement amount using any

13   relevant information, including financial records, in

14   doing that, I understood the recommendation of the

12:02:09   15   probation office into why our own independent

16   investigatory arm of the judiciary deemed it to be a

17   conservative estimate to use a multiplier of five.

18   Actually, it was -- to achieve to the at least

19   $9,500,000 in loss, you need a multiplier of, I think I

12:02:35   20   calculated out, only about 4.62, even less than five, but

21   certainly five is a reasonable multiplier.

22   So for those reasons, I find -- on what I find to be

23   detailed, credible and reliable information, I find that

24   the total loss amount intended under this is the

12:03:13   25   $10 million figure used by the probation office.  And even

*Laura Wells, CRR, RDR*

1    if it is somewhat less, as low as a little over

2    $9,500,000, it's still, with a multiplier of only 4.62,

3    the adjustment is correctly made in the probation

4    office by the -- in the PSR.

12:03:38    5        For those reasons, I overrule the objections of the

6    government at Document Number 32 and the objections of the

7    defendant at Document Number 33.

8        I think the other objections that you had, Ms. Meyers,

9    were computation objections.

12:03:56    10        MS. MEYERS:  Yes, Your Honor.  If I may just make

11    some objections clear.

12        THE COURT:  What I'll do then is deny those

13    objections as well, based upon the ruling that I have

14    made.

12:04:08    15        MS. MEYERS:  Yes, Your Honor.  First, I would

16    object to consideration from Mr. Thomas's proceedings.  We

17    were not a party, and I have not had any access to that

18    information.

19        THE COURT:  Well, the access to that information

12:04:19    20    is contained in the third addendum that you do have and

21    have told me that you have.  If you will look to the

22    table -- and which you have told me you have had for over

23    a year.  But if you'll look to the table attached to that,

24    it is, I think, identified in the third addendum as the

12:04:49    25    ACP sales, non-PayPal, and it is Appendix 3.

*Laura Wells, CRR, RDR*

1    MS. MEYERS:  So that's what the Court is
2    referring to.  Nothing from Mr. Thomas's presentence
3    report?
4         THE COURT:  Oh, no.  It's all in the third --
12:05:02  5   that's all I have.
6         MS. MEYERS:  Okay.
7         THE COURT:  I did preside over the other case.
8    Frankly, I don't remember even what the sentence was or
9    anything in that case.  I'm just saying that that's the
12:05:13  10  source of this information, according to what I understand
11   from probation.
12        MS. MEYERS:  All right.  Now I understand what
13   the Court is talking about.
14       The other is just to point out the other information
12:05:23  15  before the Court, and I understand what the Court is
16   saying.  I would note that the commentary of the guideline
17   emphasizes that, where we don't really know the retail
18   amount, that you might look at the price of the infringing
19   item and refers to a 75 percent of the retail price as the
12:05:41  20  logical figure.  And, of course, 75 percent of $10,500,000
21   is within the agreed range.
22       I would also note that I don't --
23        THE COURT:  What section are you referring to?
24        MS. MEYERS:  It is Note 2, use of retail value of
12:05:58  25  infringed item.  The infringement amount is the retail

*Laura Wells, CRR, RDR*

1   value of the infringed item multiplied by the number of

2   infringing items in the following.

3        And then, if you look at Roman numeral little two, the

4   retail price -- you might look at retail price --

12:06:14   5        THE COURT:  I'm not sure -- I'm not sure I'm

6   quite with you.

7             MS. MEYERS:  I have the red book, Page 135.

8             THE COURT:  All right.  I see.  All right.  This

9   is -- okay.

12:06:23   10            MS. MEYERS:  And so, one measure is the retail

11   price of the infringing item, as long as it's not less

12   than 75 percent of the retail price.

13        I would also question whether MSRP is appropriate in a

14   case where the corporations themselves indicate that they

12:06:41   15   don't sell at MSRP.  And I note, for example, in a case

16   *U.S. v. Liege*, where we were arguing about the value of

17   cell phones and argued that it should be the wholesale

18   value and the Court determined it should be the retail

19   value because in that case that is what the companies,

12:07:02   20   we'll say AT&T, would have sold the cell phones for.

21        In this case, we have information from the corporate

22   victims that they would never have sold at MSRP.  And so,

23   again, we would urge the Court that the $10,500,000 is not

24   a reasonable estimate, based on all of the information.

12:07:20   25            THE COURT:  Where is that retail information?

1          MS. MEYERS:  The information?  It's in the

2    victim's statements in the agreement on restitution.

3          THE COURT:  Well, those are the wholesale sellers

4    of these products; is that correct?

12:07:35   5          MS. MEYERS:  That's not what I understand.

6          THE COURT:  Are you talking about Hewlett-Packard

7    and those companies?

8          MS. MEYERS:  Yes.  Yes.

9          THE COURT:  All right.  They are the

12:07:48   10   manufacturers, aren't they?

11         MS. MEYERS:  Yes.

12         THE COURT:  All right.  Anything else?

13         MS. MEYERS:  No, Your Honor.

14         THE COURT:  All right.  Then having ruled on the

12:07:56   15   objection -- there are no other objections, are there?

16         MR. HILEMAN:  No, Your Honor.

17         MS. MEYERS:  No, Your Honor.

18         THE COURT:  Then based upon the presentence

19   investigation -- the revised presentence investigation

12:08:09   20   report and the first, second, and third addendum, there

21   are two, which I adopt with the -- any qualifications I

22   may have made on the record.

23       I find that the total -- in granting the government's

24   31.1(b) motion, I find that the total offense level is 27.

12:08:56   25   The criminal history category is one.  The recommended

*Laura Wells, CRR, RDR*

1   custody range under the advisory guidelines is from 70 to

2   87 months.  There is also a Section 5K1.1 motion pending.

3       Very well.  Ms. Meyers, do you wish to make a

4   statement for the defendant?

12:09:16    5       MS. MEYERS:  Yes, Your Honor.  The government, as

6   the Court has noted, has filed a motion for downward

7   departure based on Mr. Li's extensive cooperation; and I

8   have detailed that somewhat in the sentencing memo as

9   well.

12:09:29   10       THE COURT:  Excuse me, Ms. Meyers.  There was a

11   request here for victims to speak, also.  Maybe I should

12   hear them before you.

13       MS. MEYERS:  That's fine.  I didn't know what the

14   order was.

12:09:39   15       THE COURT:  Well, I did not mean to overlook

16   that.  I grant that.  I have letters from two companies.

17   Is there anything additional to be said beyond what is in

18   the letters?

19       MR. HILEMAN:  Your Honor, I believe so.  I

12:09:52   20   believe Mr. Casto of Cisco Systems Incorporated is here

21   only --

22       THE COURT:  All right.

23       MR. HILEMAN:  -- and he does wish to be heard on

24   behalf of his company.

12:10:01   25       THE COURT:  All right.  Mr. Casto, identify your

*Laura Wells, CRR, RDR*

1    name and what you -- and your position, please, sir.

2           MR. CASTO:  Yes, Your Honor.  My name is Tim

3    Casto, and I'm an investigator with Cisco's brand

4    protection team.

12:10:17    5           THE COURT:  Thank you.

6           THE REPORTER:  C-a-s-t-o?

7           MR. CASTO:  C-a-s-t-o, yes, ma'am.

8        I would first like to thank the Court for giving me

9    the opportunity to speak here today.  Yes, we did submit a

12:10:32   10    written victim impact statement; but I would like to try

11    to provide a little more context as to why we are here

12    today and why our company cares so much about these types

13    of cases.

14        One of the great things about the United States is

12:10:44   15    that our legal system provides protections for innovators

16    through intellectual property rights.  These protections

17    encourage companies and individuals to develop a brand or

18    a reputation so that customers can look to or rely upon

19    that company's unique features or quality.

12:11:06   20        Our company is in the fortunate position of being a

21    significant provider of networking products around the

22    world.  It has reached this position because our company

23    has invested billions in things like research and

24    development, quality controls and manufacturing processes.

12:11:22   25        All of these are designed to provide assurances to a

*Laura Wells, CRR, RDR*

1    customer who buys a Cisco branded product.  By buying a

2    Cisco branded product, it's something that our company

3    will stand behind and support.  Unfortunately, our

4    position has also made us a target for counterfeiters.

12:11:46    5        We alluded to this in our victim impact statement, but

6    I do want to point to a few potentially significant

7    impacts that counterfeit products may have.  Cisco

8    products can be deployed in critical infrastructure

9    networks, things like U.S. military, banks, hospitals,

12:12:03   10    just to name a few.  Thus, these products failing through

11    inferior products made through counterfeiting can have

12    severe impact, things that impact our safety, our

13    security, and our privacy.

14        Lastly, I just want to thank the government for their

12:12:19   15    efforts in this case.  We realize that the government has

16    limited resources and many competing priorities in

17    deciding which cases to pursue.  So we want to thank them

18    for their time and effort in this case, in particular

19    Assistant U.S. Attorney Jay Hileman and Special Agent

12:12:38   20    Corbin Wickman.

21        I am happy to answer any questions you may have.

22    Otherwise, that concludes my statement.

23            THE COURT:  Thank you, sir.  Where is your

24    office?

12:12:44   25            MR. CASTO:  I'm based in Irvine, California.

*Laura Wells, CRR, RDR*

1          THE COURT:  All right.  Well, thank you for

2     coming here today to be a part of this proceeding.

3          MR. CASTO:  Thank you, Your Honor.

4          THE COURT:  Thank you, sir.

12:12:52    5      All right.  Is that all, Mr. Hileman?

6          MR. HILEMAN:  Yes.

7          THE COURT:  Ms. Meyers then, please.

8          MS. MEYERS:  The government has filed a 5K, Your

9     Honor, in this case because from the moment of his arrest

12:13:10   10   Mr. Li cooperated with the government.  That cooperation

11    has meant hours and hours of debriefing, not just with the

12    government and the agents but with representatives of the

13    various companies, including representatives who wanted

14    information about what is happening in China, which Mr. Li

12:13:28   15   detailed for them.

16         And for those reasons, I don't know that that is why

17    the government made an agreement and has requested a

18    sentence that is below the guideline range.  Their motion

19    says three levels below the guideline range, which we had

12:13:45   20   assumed the guideline range was lower, which would be 41

21    to 46 months.  That would be the government's

22    recommendation.

23         I also want to just mention to the Court a couple of

24    things.  As those tables show, Mr. Li actually was pretty

12:14:02   25   much getting out of the business at the time that the

*Laura Wells, CRR, RDR*

1   person he thought was Scott Thomas contacted him.  Those

2   records show virtually no sales after 2014.  He was

3   converting to this other business; and, in fact, the

4   agent, when he did his calculations, took that out.

12:14:21  5      I just mention that because he was getting out.  He

6   got back in.  Not claiming entrapment or anything.  But I

7   think that's important that he was looking for another

8   business.

9       I think it's also the Court can consider and the Court

12:14:36  10  has letters from his son and his sister-in-law and from

11  Mr. Li himself.

12        THE COURT:  I have read the letters, if I did not

13  mention that before.

14        MS. MEYERS:  And I realize this is double-edged.

12:14:49  15  But Mr. Li has been in prison now for a year and a half,

16  thousands of miles from his family.  He recognizes he has

17  only himself to blame.  But that is a particular penalty.

18  We hear and we see stories of American families who are

19  desperate and concerned about their loved ones who are

12:15:11  20  incarcerated around the world and --

21        THE COURT:  Well, I would hope that they would

22  have the system of justice that our country does, and that

23  is not the case in most of those stories that we hear.

24        MS. MEYERS:  That's true, Your Honor.  And I was

12:15:26  25  thinking of Venezuela.  And I have been to a Venezuelan

1    prison, and it is not like the Federal Detention Center.

2        THE COURT:  You might think of China, too.

3        MS. MEYERS:  But I mention this because -- and

4    Mr. Li is not responsible for the prison conditions in

12:15:39  5    China.

6        THE COURT:  I recognize that.  It has nothing to

7    do with his sentence at all.

8        MS. MEYERS:  But I mention that because that is a

9    factor that this Court can consider.  He is a single

12:15:53  10   parent.  He was raising his son.  There really is nobody

11   but his elderly parents to be raising his son.  And so,

12   not surprisingly, he is desperate to get home as soon as

13   possible.

14       He understands he has to pay a price.  He has already

12:16:07  15   paid a price of a year and a half.  The government's

16   recommendation is a recommendation of three or four years.

17   All of that is a significant sentence.

18       But I think, in balancing what Mr. Li has done to

19   really make amends -- and as he talks about in his letter,

12:16:23  20   he is trying to make amends -- I think that's worthy of

21   the Court's consideration in fashioning the appropriate

22   sentence, Your Honor.

23       THE COURT:  Thank you, ma'am.  Very well.

24       Mr. Li, do you wish to make a statement on your own

12:16:36  25   behalf, sir?

*Laura Wells, CRR, RDR*

1           THE DEFENDANT:  (speaking English)  Yes, Your

2    Honor.  I am truly sorry what I did wrong before.  I'm

3    sorry for the United States of America.  Sorry for the

4    Court.  I supposed to not do that kind of stuff.

12:17:00    5           THE COURT:  Speak a little closer to the

6    microphone, please, sir.  If you can move that mic toward

7    you, if you can.

8           THE DEFENDANT:  (speaking English)  Your Honor,

9    I'm truly sorry what I did wrong before.  I supposed to

12:17:15   10    not sell this kind of counterfeit product to hurt anybody.

11    Even I -- I respect the United States of America a lot.  I

12    respect the companies.  Also, I have been working in the

13    computer industry over ten years.  And I'm truly sorry.  I

14    made a wrong decision to deal this kind of stuff.

12:17:38   15        And after the arrest, I realized how terrible I am.  I

16    -- I hurt others.  I get hurt by others before.  So I can

17    feel what the people feel also.  When I in the prison, I

18    feel more.  And I studied more English.  I studied bible.

19    And most important, I started to learn to respect others.

12:18:11   20        I know I have sinned.  I need pay for it.  My crime,

21    though, I can say I'm truly sorry.  I'm wrong.  Please

22    give me a chance.  Let me be a better man, be a better me,

23    be a better father, go back home as soon as possible.

24        In the prison there are some people that are

12:18:36   25    interested in this kind of a business.  I stopped them

*Laura Wells, CRR, RDR*

```
          1   also.  I tell them -- even I tell other people.  I told
          2   them never break any law of any country, not only the
          3   United States of America.  Never.  And there is many
          4   people want to sell counterfeit stuff.  I told them no.  I
12:18:57  5   know nothing about it.
          6       I know what really happened here is because I sold
          7   counterfeit.  I do say you never do anything, not only
          8   counterfeit stuff, not anything of a crime against the
          9   law.
12:19:16 10       And from the beginning I select and cooperated with
         11   the government because of seeking right.  I know I am
         12   wrong.  I want to make things better.  I told everything I
         13   know in the state, in this industry, and in China.
         14   Everything I know, I told them openly without hide
12:19:41 15   anything.
         16       So before you make your ruling on my sentence, please
         17   consider I'm a single parent, a single parent of a
         18   teenager boy.  My son right now is 14 years old.  When I
         19   was arrested, he was 13.  I raised him by myself from he
12:20:03 20   is four and a half until 13.
         21       Right now he stay with my parents.  They are old and
         22   unhealthy and in the hospital.  Also, my son has begun to
         23   isolate to others, do not answer my phone calls sometimes.
         24   He keep quiet.  I am very scared about his situation.  His
12:20:29 25   mother cannot take care of him.  I am the only one who can
```

35

1    support him and my parents.

2         And right now, I'm in prison.  I have no ability to

3    pay any restitution; but I promise in the future I will

4    pay, by my life.  I will work hard when I go back to China

12:21:01   5    to help pay the restitution amount to clear my name, be a

6    real man, be a better man.  I'll never break any law of

7    America or any countries.  I'm truly sorry.  I am

8    finished.

9         THE COURT:  Thank you, sir.  All right.

12:21:22   10        Mr. Hileman, do you have a statement to make for the

11    government?

12        MR. HILEMAN:  Yes, Your Honor.  Very briefly.  I

13    would add to what Ms. Meyers said about his substantial

14    cooperation.  The meetings of the defendant with the case

12:21:35   15    agent and his cooperation led to charges against a company

16    in Florida.  Those are counterfeit computer importation

17    charges.  They are pending before this Court.  Mr. Li has

18    promised to testify in that case that's scheduled for

19    April; and for that reason, I believe his cooperation has

12:21:52   20    been substantial and deserves a three-level departure.

21        I would also reiterate what she said that he also

22    agreed to meet with the victims in this case to help them

23    improve their security against this type of crime.

24        And finally, I would just urge the Court to sentence

12:22:11   25    the defendant in accordance with the recommendations that

*Laura Wells, CRR, RDR*

1    the government has made in writing and his plea agreement

2    and in its motion for downward departure.

3         THE COURT:  Thank you, sir.

4         I believe the full amount of restitution has not yet

12:25:05   5    been determined; is that correct?

6         MR. HILEMAN:  I believe that's correct, Your

7    Honor.

8         THE COURT:  There are other victims besides those

9    two victims that have not stated certain amounts?

12:25:15   10        MR. HILEMAN:  Correct.

11        THE COURT:  All right.

12        MS. MEYERS:  And we have entered into an

13   agreement with the two victims who did respond.

14        THE COURT:  With regard to those two, but there

12:25:23   15   are still other victims that have not been heard?

16        MS. MEYERS:  Yes.

17        THE COURT:  And do you expect that to come later?

18        MR. HILEMAN:  We hope it would, Your Honor.  We

19   do expect.

12:25:32   20        THE COURT:  All right.  I'll state now the

21   sentence that the Court intends to impose.  I'll give a

22   final opportunity for any legal objections, if there are

23   any, final objections before it is finally imposed, other

24   than those objections already made.

12:25:47   25        I have considered the advisory guidelines.  I find the

*Laura Wells, CRR, RDR*

1  sentence within the guideline scheme is appropriate to

2  achieve the objectives of Section 3553(a).  I grant the

3  government's Section 5K1.1 motion and will make a downward

4  departure pursuant thereto.

5      Pursuant to the Sentencing Reform Act of 1984, it's

6  the judgment of the Court that the defendant Ruiyang Li is

7  hereby committed to the custody of the Bureau of Prisons

8  to be imprisoned for a term of 54 months.

9      Upon release from imprisonment, the defendant shall be

10  placed on supervised release for a term of three years.

11  Within 72 hours after release from the custody of the

12  Bureau of Prisons the defendant shall report in person to

13  the probation office in the district to which the

14  defendant is released.

15      While on supervised release, the defendant shall not

16  commit another federal, state, or local crime; shall

17  comply with the standard conditions that have been adopted

18  by this Court under General Order Number 2017-01; abide by

19  any mandatory conditions required by law; and shall comply

20  with the following additional conditions.

21      The mandatory drug testing condition is suspended,

22  based on the Court's determination that the defendant

23  poses a low risk for future substance abuse.

24      You must immediately report on supervised release to

25  U.S. Immigration and Customs Enforcement and follow all

*Laura Wells, CRR, RDR*

1    their instructions and reporting requirements until any

2    deportation proceedings are completed.

3         If you are ordered deported from the United States,

4    you must remain outside the United States unless legally

12:27:37    5    authorized to re-enter.  If you re-enter the United

6    States, you must report to the nearest U.S. probation

7    office within 72 hours after your return.

8         You must seek proper documentation from U.S.

9    Immigration and Customs Enforcement authorizing you to

12:27:54    10   work in the United States.

11        You shall pay the outstanding monetary restitution

12   imposed by the Court, the exact amount of which is yet to

13   be calculated and determined by the government from the

14   victims.

12:28:10    15        You must provide the probation officer with access to

16   any requested financial information and authorize the

17   release of any financial information.  The probation

18   office may share financial information with the U.S.

19   attorney's office.

12:28:26    20        It is further ordered that the defendant shall pay to

21   the United States a special assessment of $100.  Having

22   assessed the defendant's ability to pay, payment of the

23   total criminal monetary penalty shall be due, as follows:

24        The defendant shall make a lump sum payment of $100

12:28:44    25   due immediately.  The balance due in payments of the

1    greater of $25 per quarter or 50 percent of any wages

2    earned while in prison in accordance with the Bureau of

3    Prisons inmate financial responsibility.

4         Any balance remaining after release from imprisonment

12:29:08    5    shall be due in the total lump sum of the restitution that

6    is finally ordered.

7         If the defendant is in the United States, then it

8    should be paid in monthly installments of $500 per month

9    to commence 60 days after the date of release to a term of

12:29:33   10    supervision.  Payment should be made through the United

11    States District Clerk, Southern District of Texas.

12         Any legal reason why the sentence should not be

13    imposed as stated?

14              MR. HILEMAN:  No, Your Honor.

12:29:44   15              MS. MEYERS:  None other than the ones already

16    previously stated, Your Honor.

17              THE COURT:  Very well.  Then pursuant to the

18    Sentencing Reform Act of 1984, it's the judgment of the

19    Court that the sentence as stated is imposed upon

12:29:58   20    defendant Ruiyang Li.

21         Mr. Li, you have a right to appeal this matter unless

22    you have waived your appeal rights.  I have not gone back

23    and looked at your plea agreement on that.  Ms. Meyers

24    will advise you of any appeal rights you may have

12:30:11   25    retained.

*Laura Wells, CRR, RDR*

1        I'll also give to you this written notice of your

2   rights, and a copy of this will be retained in the court

3   file.

4        If you cannot afford a lawyer to represent you on

12:30:20   5   appeal and you can satisfy the Court that you meet the

6   criteria for the appointment of counsel, I will appoint a

7   lawyer for you.

8        Is there anything further in this case this morning?

9            MR. HILEMAN:  The government requests that the

12:30:33  10   remaining counts be dismissed pursuant to the plea

11   agreement.

12            THE COURT:  Very well.  Do you -- I have the

13   government request for the dismissal of Counts One and

14   Three through Nine; is that correct?

12:30:51  15            MR. HILEMAN:  Yes, Your Honor.

16            THE COURT:  Pursuant to the plea agreement, I

17   grant that motion; and I have signed the order dismissing

18   those other counts.

19        Anything else, Counsel?

12:31:06  20            MR. HILEMAN:  Not from the United States.

21            MS. MEYERS:  No, Your Honor.

22            THE COURT:  All right.  Thank you.  That

23   concludes this sentence.  The defendant is remanded to the

24   custody of the marshal.

25            *(Proceedings concluded at 12:31 p.m.)*

*Laura Wells, CRR, RDR*

1  *Date:  March 19, 2021*

2  **COURT REPORTER'S CERTIFICATE**

3      *I, Laura Wells, certify that the foregoing is a*

4  *correct transcript from the record of proceedings in the*

5  *above-entitled matter.*

6                    _____/s/_Laura Wells_____

7              *Laura Wells, CRR, RMR*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25